UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:17-CV-81024-ROSENBERG/REINHART

SHARON TULLOCH,

    Plaintiff,

v.

REGIONS BANK,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's joint Motion for Summary Judgment [DE 29]. The motion has been fully briefed.[1] For the reasons set forth below, the Motion is granted.

This is a case involving fraud. More specifically, this is a case where an employee at a bank was induced to transfer money out of a customer's account and then, after the fraud was discovered, the employee was fired. Subsequent to being fired, the employee filed this suit, alleging that her termination was for discriminatory reasons and was not due to the aforementioned fraud.

### I.    UNDISPUTED MATERIAL FACTS[2]

Plaintiff is a black female who previously worked for the Defendant, Regions Bank. DE 28 at 1. Plaintiff's job responsibilities included communications with customers regarding their transactions, including customer requests for cashier's checks. *Id.* Plaintiff could receive requests for cashier's checks, and could authorize that checks be issued, but she could not prepare the actual

---

[1] Because counsel for the Defendant has informed the Court of a potential trial conflict between this case and another case, the Court has endeavored to render its decision expeditiously.

[2] These facts are supported with proper citations to record evidence in Defendant's Statement of Undisputed Material Facts and were deemed admitted by the Court at docket entry 51.

checks. *Id.* Instead, Plaintiff had to request that a bank teller prepare cashier's checks. *Id.* Because Plaintiff's job required her to develop personal relationships with customers, it was important that Plaintiff avoid fraud when undertaking transactions by ensuring that she was dealing with the actual customer, and not an imposter. *Id.*

In April of 2016, Plaintiff received a copy of Region's Fraud-Prevention Policy. *Id.* at 2. That Policy stated that when a customer sent an e-mail requesting a transaction, the customer should be present in the branch to authenticate the identity of the customer prior to effecting the transaction. *Id.* The Policy also stated that the failure to follow the Policy could result in disciplinary action. *Id.* At no time has Regions ever permitted employees to receive an e-mail direction from a customer to issue a cashier's check and issue such check by mail without having authenticated the identity of the customer in person or, at a minimum, telephonically. *Id.*

On May 6, 2016, Plaintiff received an e-mail request for a $10,000 wire transfer. DE 28-2 at 97. The identity of the requestor has been redacted in the court file, so the Court refers to the requestor as the "Imposter Customer." Plaintiff responded to the Imposter Customer by telling him that a wire transfer would require him to be physically present in the bank. *Id.* The Imposter Customer then responded as follows:

> Sharon,
>
> Thanks for your response, I understand is [sic] a wire transfer but right now I am out of the town [sic] and i [sic] need to make the transfer as a matter of urgency.
>
> Could you please advice [sic] and let me know what help you can render for me to complete the transfer in time. [sic]
>
> Awaiting your urgent response.

*Id.* at 96.  Plaintiff responded to the e-mail by indicating that she could send a cashier's check overnight, but that she would need an address to do so.  *Id.*  Upon receipt of this e-mail, the Imposter Customer immediately provided contact details to receive the cashier's check:

> Thanks for the help Sharon, here is the contact details to receive the cashier check.  Please let me know as soon as you done [sic] and when is the cashier check going to be ready to cash out. [sic]

*Id.* at 95.  Before Plaintiff sent the cashier's check, however, she realized that the Imposter Customer had requested more funds than the relevant bank account contained.  *Id.*  She inquired, then, whether she should take money from a line of credit to cover the balance requested.  *Id.*  The Imposter Customer responded:

> Alright please kindly go ahead and take the money from the loan.  let [sic] me know when you [sic] done.

*Id.* at 94.  Plaintiff authorized the cashier's check and sent the check via overnight FedEx.  *Id.*  The next day, the Imposter Customer again e-mailed Plaintiff.  The Imposter Customer requested a second cashier's check:

> Sharon,
>
> How are you doing and hope my email fine [sic] you well?
>
> I would like to let you know that the receiver of that check will not be able to receive the cashier check due to some issues on the bank account and i [sic] will like to [sic] give you the new contact details to re issued [sic] the check and cancel that one.
>
> Please advice [sic] and get back to me in time.

*Id.* at 93.  Plaintiff responded by informing the Imposter Customer that she could not stop payment or cancel the cashier's check.  *Id.*  The Imposter Customer then requested a second check again:

> Sharon,

> Thanks for your urgent response, I will let him to inform [sic] the bank to return the cashier check back [sic] and meanwhile can you make arrangement to issue a new one again for me now so that i [sic] can give you the details in your reply back. [sic]
>
> Awaiting your urgent response.

*Id.* at 92. Plaintiff reminded the Imposter Customer that the bank account was now empty, so the bank would only be able to advance him an additional $8,000 on credit because, at that amount, the customer's credit line would be exhausted. *Id.*; DE 28 at 5. The Imposter Customer was unconcerned about the additional extension of credit, and inquired whether Plaintiff had sent the second check. DE 28-2 at 91. Plaintiff sent the second check. *Id.* at 90-91. Later, Plaintiff sent a third cashier's check, drawing from an additional bank account, to yet another address at the Imposter Customer's request. DE 28 at 3. Plaintiff did not meet with or speak with the customer of record before authorizing any of the three cashier's checks at issue, nor did Plaintiff attempt to verify the Imposter's identity. *Id.*

After Plaintiff sent the third cashier's check, Regions learned from the actual customer that the customer had never requested any cashier's checks. *Id.* at 5-6. Two of the three cashier's checks had been successfully cashed, resulting in a net loss to Regions of $12,000. *Id.* Plaintiff's branch manager has never been notified of any employee, other than Plaintiff, who has received an e-mail direction from a customer to issue a cashier's check, and who has issued such check by mail without having authenticated the identity of the customer in person or telephonically, causing a financial loss to Regions. *Id.* at 8.

The customer affected by the foregoing transactions signed an affidavit stating that he had not authorized the cashier's checks on June 1, 2016. DE 28-2 at 62. Five days later, on June 6, 2016, Plaintiff took FMLA leave. *Id.* Plaintiff's FMLA leave was for "generalized anxiety

4

disorder." DE 1-1 at 5. While Plaintiff was on FMLA leave, she filed a complaint alleging racial discrimination. *Id.* at 66. Plaintiff returned from her FMLA leave on August 30, 2016. DE 28 at 9. Upon returning, Plaintiff submitted a physician's note stating that she needed to take a fifteen-minute "stress-free break" every hour. *Id.* Regions allowed Plaintiff to take these breaks. *Id.* On October 29, 2012, Regions terminated Plaintiff based upon her triple violation of the Regions Fraud-Prevention Policy and the corresponding financial loss that her violations caused to Regions. *Id.* at 1, 8. Thereafter, Plaintiff filed this suit, alleging that she was fired on the basis of her race and disability. Plaintiff's counts are as follows: Race Discrimination under the Florida Civil Rights Act (Count I), Color Discrimination under the Florida Civil Rights Act (Count II), Disability Discrimination under the Florida Civil Rights Act (Count III), Family and Medical Leave Act Interference (Count IV), and Family and Medical Leave Act Retaliation (Count V).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most

5

favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III. ANALYSIS

Regions argues that it is entitled to summary judgment as to each of Plaintiff's counts. The Court addresses each count (and Regions' corresponding arguments) in turn.

#### A. <u>PLAINTIFF'S FAILURE-TO-PROMOTE CLAIMS ARE TIME-BARRED (COUNT I, COUNT II, AND COUNT III)</u>

Plaintiff's operative complaint contains references to Regions' decision not to promote her in years past. Regions argues that Plaintiff's failure-to-promote claims are time-barred. "As a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, the claimant is required to file a complaint with the [Florida Commission on Human Relations] within 365 days of

6

the alleged violation." *Woodham v. Blue Cross & Blue Shield of Fla.*, 829 So. 2d 891, 894 (Fla. 2002). Plaintiff testified that she bases her failure-to-promote claims on (1) Regions' decisions in 2013 and 2014, respectively, to promote non-black employees to the position of assistant manager and (2) Regions' decision in 2013 to promote another employee instead of Plaintiff because Plaintiff is disabled. DE 28 at 9. Plaintiff's charge of discrimination first raising these failure-to-promote claims, however, is dated November 22, 2016, and is stamped as "received" by an administrative agency on December 27, 2016. Thus, Plaintiff filed her charge at least two years after the alleged 2014 violation and three years after the alleged 2013 violation. In response to Regions' argument on this issue, Plaintiff concedes that she is not asserting a failure-to-promote discrimination claim. DE 39 at 12. Because Plaintiff neglected to file a charge on her claims within the statutorily-mandated time frame and because of Plaintiff's concession to the same, Plaintiff's failure-to-promote claims are time-barred. Thus, to the extent Plaintiff's Count I, Count II, or Count III are premised upon a failure-to-promote theory, summary judgment is granted in Regions' favor.

### B. **PLAINTIFF'S RACIAL DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW (COUNT I AND COUNT II)**

Regions argues that Plaintiff's racial discrimination claims fail as a matter of law. For Plaintiff's racial FCRA claims (Count I and Count II) to succeed, Plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside of her protected class. *Edmond v. Univ. of Miami*, 441 F. App'x 721, 724 (11th Cir. 2011). With respect to the fourth element, Plaintiff has no evidence of a similarly-situated individual who was treated differently—Plaintiff has no comparator. *See Maynard v. Bd. of*

*Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (holding that in order to establish a prima facie case of discrimination, the employee must show he was treated less favorably than a similarly-situated individual outside of his protected class). To be proper, a comparator must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aero, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). In determining whether a comparator is similarly-situated, courts inquire "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1323 (11th Cir. 2006). "Material differences in 'ranks and responsibilities' may render any comparison impossible without confusing apples with oranges." *Horn v. USPS, Inc.*, 433 F. App'x 788, 793 (11th Cir. 2011). Plaintiff has admitted that she authorized the issuance of three cashier's checks to an imposter, that she did so without any verification of identity, and that her actions violated Regions' policies. Plaintiff has no similarly-situated employee who engaged in the same activity and was treated differently.

Although Plaintiff attempts to argue that her manager was disciplined more leniently than her for the transactions in this case, Plaintiff admits that her manager is a different "rank" than Plaintiff (a material difference), has different responsibilities than Plaintiff (another material difference), was working as a teller during the time period at issue (another material difference), and ultimately was responsible for a different sort of failing than Plaintiff—he failed to properly supervise Plaintiff's actions in this case—which is yet another material difference. DE 28. Plaintiff also attempts to argue that other employees sent cashier's checks without consequence in the past, but Plaintiff admits that she does not know whether those employees verified customer

8

identities. *Id.* at 7-8. Plaintiff has no comparator. For this reason alone, Plaintiff's racial discrimination claims (Count I and Count II) fail as a matter of law.

Plaintiff also argues that she has evidence that shows a "convincing mosaic" of racial discrimination. Putting aside for the moment the particulars of Plaintiff's evidence, the Court is unable to locate—and Plaintiff has not provided—any case in which a Florida court has adopted a "convincing mosaic" standard under the FCRA. *See, e.g.*, *Johnson v. Great Expressions Dental Ctrs. Of Fla., P.A.*, 132 So. 3d 1174, 1178 (Fla. Dist. Ct. App. 2014) (stating that "[w]e also note that no Florida court has adopted or even mentioned the 'convincing mosaic' standard"). For this reason, Plaintiff's racial discrimination claims (Count I and Count II) fail as a matter of law.

Even if this Court were to consider whether Plaintiff has evidence that shows a "convincing mosaic" of racial discrimination, Plaintiff's evidence is insufficient. First, Plaintiff cites to her positive performance reviews. On the evidence of this case, such reviews are not evidence of pretext. Regardless of Plaintiff's past performance, Plaintiff has admitted that she drained a customer's bank account, drew upon a customer's line of credit, and transmitted funds without any verification of identity, all because of e-mails riddled with grammatical errors. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999). Regions could have believed that Plaintiff's termination was honestly permissible because of Plaintiff's actions.

Second, Plaintiff cites to comments by Regions' employees that "this bank only fires white people and black people," that "all black girls have attitude," and that Plaintiff drove a Mercedes.[3] DE 39 at 8. These remarks are not sufficient for Plaintiff's prima facie case, because they are

---
3 The Court is unable to discern how a remark about a Mercedes may be interpreted as a racially-charged statement.

unrelated to the decisional process at issue. *See Steger v. GE Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003); *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 874 (11th Cir. 2011) (holding that general references to a plaintiff's age by decision maker did not create a genuine issue of fact as to whether age was the real reason for his termination, as plaintiff failed to link those statements to the decision to terminate his employment); *see also Mells v. Shinseki*, No. 13-CV-3214, 2015 WL 4716212, at *6 (M.D. Fla. Aug. 7, 2015) (stating that decision maker's "remarks are probative only if they illustrate the decision-maker's state of mind at the time that he made the challenged employment decision").

Even if Plaintiff did have sufficient evidence for a prima facie case, Regions has met its burden to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Plaintiff attempts to satisfy her burden by arguing she has shown "weaknesses and implausibilities" such that a reasonable juror could find Regions' basis for termination was unbelievable. Plaintiff's argument on this point, which spans pages nine through twelve of her Response, contains no citations to the record. For this reason alone, the Court rejects Plaintiff's argument. Even so, the Court has endeavored to review Plaintiff's proffered additional facts on summary judgment, but many of Plaintiff's citations do not support her propositions. By way of example, Plaintiff's additional facts contend that Plaintiff's manager "approved" the transactions at issue. DE 40 at 3. But Plaintiff's citation does not directly support that proposition. Plaintiff cites to a manager's deposition, but the manager merely attested that his (limited) approval was based upon his reliance

on Plaintiff's own interactions with the customer. *See id.* at 152-54. Similarly, Plaintiff contends that Regions admitted that Plaintiff would not have been fired if there had been no loss to the bank. Putting aside whether this is a relevant argument (since an employer may discipline an employee for losses it incurs due to an employee's actions), Plaintiff's citation does not fully support her proposition. In the relevant deposition, the Regions' representative states that Plaintiff would not have been terminated if *the e-mails had actually come from the true customer. Id.* at 103. The Court fails to see how this statement evinces a weakness in Regions' basis for termination, such that Plaintiff's failure to produce a comparator may be overlooked or that Regions' basis for termination could not be believed. The foregoing are just some examples of many of Plaintiff's citations to record evidence that do not support her propositions. Without belaboring the point, the Court adopts and incorporates Regions' argument in its Reply as to this issue as Regions has carefully and adequately described why Plaintiff's citations are not persuasive. *See* DE 46, 50.

In summary, Plaintiff has no evidence to meet Regions' basis for termination head-on and rebut it. The Court concludes that the record strongly supports Regions' non-discriminatory basis for termination. For all of the foregoing reasons, Regions is entitled to summary judgment as to Count I and Count II.

## C. **PLAINTIFF CANNOT ESTABLISH THAT REGIONS FAILED TO ACCOMMODATE HER OR TERMINATED HER BECAUSE OF A DISABILITY (COUNT III)**

Plaintiff's Count III alleges that Regions did not accommodate Plaintiff's disability. DE 13 at 8. For Plaintiff to establish a prima facie case, she must prove (1) she is disabled, (2) she is a qualified individual, and (3) she was discriminated against by Regions' failure to provide a reasonable accommodation. *McKane v. UBS Fin. Servs. Inc.*, 363 F. App'x 679, 681 (11th Cir.

11

2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). With respect to the third element, Plaintiff has admitted that she only made one request for accommodation—fifteen minute stress-free breaks every hour—and that Regions accommodated that request. DE 28 at 9. Summary judgment is entered in Regions' favor as to Plaintiff's Failure to Accommodate count, Count III.[4]

### D. **PLAINTIFF CANNOT ESTABLISH THAT REGIONS INTERFERED WITH HER FMLA LEAVE (COUNT IV)**

Plaintiff's Count IV is a claim for FMLA interference. For Plaintiff to state a claim for FMLA interference, Plaintiff must establish that she was entitled to a benefit under the FMLA and that Regions denied her that benefit. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Here, Plaintiff has admitted that she received all of the substantive rights to which she was entitled under the FMLA. Plaintiff requested FMLA leave, and she was granted that leave. DE 28 at 8-9. Plaintiff took the maximum possible amount of leave. *Id.* Upon returning from her leave, Plaintiff was restored to the same position she had previously held. *Id.* at 9. Plaintiff requested an accommodation, and she was granted that accommodation. *Id.* Because the record shows that Plaintiff received every FMLA benefit to which she was entitled, summary judgment must be entered in Regions' favor as to Plaintiff's Count IV. *E.g., Giles v. Daytona State Coll., Inc.*, 542 F. App'x 869, 874-75 (11th Cir. 2013) (upholding district court's granting of summary judgment to the employer on an FMLA interference claim where the record confirmed that the plaintiff used all of her available FMLA leave, and thus, there was no evidence that she was denied an FMLA benefit to which she was entitled); *see also Arora v. Dental Health Group,*

---

4 Summary judgment is entered in Regions' favor on Count III for other reasons discussed below. Stated generally, Plaintiff has no evidence to link her adverse employment action to her disability other than temporal proximity which is insufficient on the facts of this case as a matter of law.

12

*P.A.*, 898 F. Supp. 2d 1307, 1310 (S.D. Fla. 2012) (granting summary judgment to an employer because the FMLA interference claim was, in reality, an FMLA retaliation claim).

E. **PLAINTIFF CANNOT ESTABLISH THAT HER FMLA RETALIATION CLAIM IS CAUSUALLY CONNECTED TO HER TERMINATION (COUNT V)**

Regions argues that Plaintiff has no evidence of causation to connect her termination to her FMLA leave. In response, Plaintiff argues that there is a close temporal proximity between the end of her FMLA leave (August 31st) and the date of her termination (October 4th). Plaintiff's position, however, ignores Eleventh Circuit precedent such as *Drago v. Jenn*, 453 F.3d 1301, 1308 (2006). In *Drago*, an employer provided record evidence that it was contemplating demoting an employee. *Id.* In response, the employee took FMLA leave. *Id.* When the employee returned from his FMLA leave, he was demoted. *Id.* The employee filed suit, arguing that the close temporal proximity between his FMLA leave and his demotion showed causation. *Id.* The Eleventh Circuit held as follows: "[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Id.*

Here, Plaintiff admits that she knew Regions was preparing to terminate her before she took FMLA leave. DE 28. A fellow employee told Plaintiff "they are going to fire you." *Id.* at 8. Plaintiff began to exchange text messages with others for the purpose of finding a new job. *Id.* Plaintiff's FMLA leave was taken mere days after she learned that she had been sending cashier's checks to an imposter, and Plaintiff knew that Regions was investigating the same. For these

reasons, Plaintiff's reliance upon temporal proximity fails, and Regions is entitled to summary judgment as to Plaintiff Count V.[5]

## IV. CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Regions' Motion for Summary Judgment [DE 29] is **GRANTED** and the Clerk of the Court shall **CLOSE THIS CASE**. All other pending motions are **DENIED AS MOOT**. Regions shall submit a proposed final judgment in Microsoft Word format to Rosenberg@flsd.uscourts.gov within two days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 17th day of August, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

5 The Court is unable to discern from Plaintiff's Response any other evidentiary ground upon which she relies to establish her FMLA retaliation claim. Although it is possible that Plaintiff attempted to develop an argument on this point pertaining to circumstantial evidence of discrimination, Plaintiff's discussion and citations on this point were limited to evidence of *racial* discrimination, not disability discrimination. *See* DE 39 at 6-16.